1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RIORA BENEPHRAIM,                    Case No. 2:24-cv-03310-CSK

12              Plaintiff,                ORDER ON PARTIES' CROSS MOTIONS
                                          FOR SUMMARY JUDGMENT
13         v.
                                          (ECF Nos. 12, 15)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17         Plaintiff Riora Benephraim seeks judicial review of a final decision by Defendant

18   Commissioner of Social Security denying an application for disability insurance benefits

19   and supplemental security income.[1] In the summary judgment motion, Plaintiff contends

20   the final decision of the Commissioner contains legal error and is not supported by

21   substantial evidence. Plaintiff seeks a remand for further proceedings. The

22   Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment,

23   and seeks affirmance.

24         For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-

25   motion is GRANTED, and the final decision of the Commissioner is AFFIRMED.

26   / / /

27   _____

28   [1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and
     proceeds on the consent of all parties. (ECF Nos. 6-8.)

                                          1

1    **I.      SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

2           The Social Security Act provides benefits for qualifying individuals unable to

3    "engage in any substantial gainful activity by reason of any medically determinable

4    physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the

5    "claimant") seeks Social Security disability benefits, the process for administratively

6    reviewing the request can consist of several stages, including: (1) an initial determination

7    by the Social Security Administration; (2) reconsideration; (3) a hearing before an

8    Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the

9    Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

10          At the hearing stage, the ALJ is to hear testimony from the claimant and other

11   witnesses, accept into evidence relevant documents, and issue a written decision based

12   on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In

13   evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

14          **Step One**: Is the claimant engaged in substantial gainful activity? If yes,
            the claimant is not disabled. If no, proceed to step two.

15          **Step Two**: Does the claimant have a "severe" impairment? If no, the
            claimant is not disabled. If yes, proceed to step three.
16
            **Step Three**: Does the claimant's combination of impairments meet or
17          equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")?
            If yes, the claimant is disabled. If no, proceed to step four.
18
            **Step Four**: Is the claimant capable of performing past relevant work? If
19          yes, the claimant is not disabled. If no, proceed to step five.

20          **Step Five**: Does the claimant have the residual functional capacity to
            perform any other work? If yes, the claimant is not disabled. If no, the
21          claimant is disabled.

22   *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4),

23   416.920(a)(4). The burden of proof rests with the claimant through step four, and with

24   the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the

25   ALJ finds a claimant not disabled, and the Social Security Appeals Council declines

26   review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v.*

27   *Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of

28   review is a non-final agency action). At that point, the claimant may seek judicial review

1    of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

2          The district court may enter a judgment affirming, modifying, or reversing the final

3    decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial

4    review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has

5    repeatedly admonished that the court cannot manufacture arguments for the plaintiff.

6    *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep.*

7    *Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court

8    should "review only issues which are argued specifically and distinctly," and noting a

9    party who fails to raise and explain a claim of error waives it).

10         A district court may reverse the Commissioner's denial of benefits only if the ALJ's

11   decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d.

12   at 1154. Substantial evidence is "more than a mere scintilla" but "less than a

13   preponderance," i.e., "such relevant evidence as a reasonable mind might accept as

14   adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in

15   the record that both supports and detracts from the ALJ's conclusion, but may not affirm

16   on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th

17   Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in

18   testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision

19   must be upheld where the evidence is susceptible to more than one rational

20   interpretation, or where any error is harmless. *Id.*

21   **II.    FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

22         On November 15, 2021, Plaintiff applied for disability insurance benefits and

23   supplemental security income under Titles II and XVI of the Social Security Act, alleging

24   she has been disabled since July 12, 2004. Administrative Transcript ("AT") 239-52

25   (available at ECF No. 9[2]). Plaintiff amended the alleged onset date of disability to

26   _____

27   [2]  The Administrative Transcript was filed twice, on January 31, 2025 (ECF No. 9) and
     on February 3, 2025 (ECF No. 10). Neither party addresses this in their briefs, and the
     Court is unable to determine why this occurred. Accordingly, the Court will cite the

28   transcript filed first, at ECF No. 9.

1  November 15, 2021, and as such, she is not entitled to a period of disability and

2  disability insurance benefits under Title II of the Social Security Act because Plaintiff

3  would not have disability insured status on the date of onset. AT 19, 42. At the April 24,

4  2024 hearing, Plaintiff voluntarily elected to withdraw her request for hearing as it

5  pertains to the application for a period of disability and disability insurance benefits. *Id.*

6  Plaintiff claimed disability due to dysautonomia, Ehlers-Danlos syndrome, fibromyalgia,

7  temporomandibular joint dysfunction, intractable migraine, ADHD, chronic fatigue

8  syndrome, chronic pain syndrome, interstitial cystitis, and bipolar disorder. AT 57.

9  Plaintiff's applications were denied initially and upon reconsideration; she sought review

10  before an ALJ. AT 56-95, 96-130, 125-26, 180. Plaintiff appeared with a representative

11  at a April 24, 2024 hearing before an ALJ, where Plaintiff testified about her impairments

12  and a vocational expert testified about hypothetical available jobs in the national

13  economy. AT 41-55.

14      On June 7, 2024, the ALJ issued a decision finding Plaintiff was not disabled. AT

15  18-31. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

16  since November 15, 2021, the amended alleged onset date. AT 21. At step two, the ALJ

17  determined Plaintiff had the following severe impairments:  obesity, fibromyalgia, chronic

18  fatigue, Ehlers-Danlos syndrome, depression, anxiety, borderline personality disorder,

19  and attention-deficit hyperactivity disorder. *Id.* At step three, the ALJ found Plaintiff's

20  combination of impairments did not meet or medically equal any Listing. AT 23. (citing 20

21  C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listing

22  14.06 (undifferentiated and mixed connective tissue disease) for Plaintiff's physical

23  impairments, and Listings 12.04 (depression), 12.06 (anxiety), 12.08 (personality and

24  impulse-control disorders), 12.10 (autism spectrum disorder), 12.11

25  (neurodevelopmental disorders), and 12.15 (trauma- and sensor-related disorders) for

26  Plaintiff's mental impairments, examining the "Paragraph B" criteria for the mental

27  / / /

28  / / /

4

1  impairments.[3] The ALJ found Plaintiff moderately limited in interacting with others,

2  concentrating, persisting or maintaining pace, and in adapting or managing oneself; he

3  also found Plaintiff mildly limited in understanding, remembering or applying information.

4  AT 23-24.

5       The ALJ then found Plaintiff had the residual functional capacity to perform light

6  work (20 C.F.R. §§ 404.1567(b) and 416.967(b)), except that Plaintiff:

> [C]an never climb ladders, ropes, or scaffolds. She can never
> balance (as defined by the Selected Characteristics of
> Occupations). She can only occasionally climb ramps and
> stairs, stoop, kneel, crouch, and crawl. She cannot work in an
> environment with exposure to extreme heat (defined as over
> 90 degrees) and extreme cold (defined as under 30 degrees.
> She should never be exposed to environmental hazards,
> such as high exposed places, moving mechanical parts, and
> open bodies of water. She is limited to no more than frequent
> interactions with supervisors and coworkers and only
> occasional interactions with the public. In addition. She
> cannot perform work requiring a specific production rate,
> such as assembly-line work or work that requires hourly
> quotas.

15  AT 25. In crafting this residual functional capacity, the ALJ stated he considered

16  Plaintiff's symptom testimony, and the medical opinions and prior administrative medical

17  findings. AT 26.

18      Based on the residual functional capacity, the ALJ determined at step four that

19  Plaintiff had no past relevant work. AT 30. However, at step five, the ALJ found Plaintiff

20  capable of performing other jobs in the national economy, including:  (i) routing clerk,

21  light, unskilled, SVP 2, with approximately 123,000 jobs nationally; (ii) price marker, light,

---

[3] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders
limit their functioning:  understanding, remembering, or applying information; interacting
with others; concentrating, persisting, or maintaining pace; and adapting or managing
oneself. To be found disabled under the Paragraph B categories, the mental disorder
must result in an "extreme" limitation of one, or "marked" limitation of two, of the four
areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental
Disorders, sub. A.2.b. "Paragraph C" of listings including 12.04, 12.06, and 12.15,
provides criteria used to evaluate "serious and persistent mental disorders." To be
"serious and persistent" there must be a medically documented history of the existence
of the mental disorder over a period of at least 2 years. *Id.*, sub. A.2.c.

1  unskilled, SVP 2, with approximately 165,000 jobs nationally; and (iii) assembler, small

2  parts, light, unskilled, SVP 2, with approximately 320,000 jobs nationally. AT 30-31.

3      On September 30, 2024, the Appeals Council rejected Plaintiff's appeal. AT 1-6.

4  Plaintiff filed this action requesting judicial review of the Commissioner's final decision,

5  and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 12, 15.)

6  **III.    ISSUES PRESENTED FOR REVIEW**

7      Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons

8  to dismiss Plaintiff's testimony. Pl. MSJ at 7 (ECF No. 12). Plaintiff seeks a remand for

9  an award of benefits, or alternatively, further proceedings. *Id.*

10      The Commissioner argues the ALJ appropriately discounted Plaintiff's subjective

11  testimony. Def. MSJ at 5-10 (ECF No. 15). Thus, the Commissioner contends the

12  decision as a whole is supported by substantial evidence and should be affirmed. *Id.* at

13  10-11.

14  **IV.    DISCUSSION**

15      **A.    Subjective Symptom Testimony**

16      Plaintiff argues that the ALJ erred by failing to provide clear and convincing

17  reasons to discount Plaintiff's subjective symptom testimony. Pl. MSJ at 7-10.

18          1.    Legal Standards

19      A claimant's statements of subjective symptoms alone are insufficient grounds to

20  establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). If an ALJ was required to

21  believe every allegation of pain or impairment, disability benefits would run afoul of the

22  Social Security Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir.

23  2014). In evaluating the extent to which an ALJ must credit the claimant's report of their

24  symptoms, the Ninth Circuit has stated:

25          First, the ALJ must determine whether the claimant has presented
            objective medical evidence of an underlying impairment which could
26          reasonably be expected to produce the pain or other symptoms
            alleged. In this analysis, the claimant is not required to show that her
27          impairment could reasonably be expected to cause the severity of the
            symptom she has alleged; she need only show that it could
28          reasonably have caused some degree of the symptom. Nor must a

1

2

3

4

5

> claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

6  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's

7  reasons for discounting or rejecting a claimant's subjective symptom testimony must be

8  sufficiently specific to allow a reviewing court to conclude the adjudicator did not

9  arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493

10  (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing

11  reasons" for discounting or rejecting a claimant's subjective symptom testimony include:

12  prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

13  2007); inconsistencies between the plaintiff's testimony and conduct (including daily

14  activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged

15  symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261

16  F.3d 853, 857 (9th Cir. 2001); an unexplained or inadequately explained failure to follow

17  a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991);

18  or prior inconsistent statements by the plaintiff, *Fair v. Bowen*, 885 F.2d 597, 604 n.5

19  (9th Cir. 1989). A lack of corroborating, objective medical evidence alone is insufficient

20  grounds for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may

21  consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

22                    2.      Plaintiff's Symptom Testimony

23          Regarding Plaintiff's symptom testimony, the ALJ began by summarizing

24  Plaintiff's symptoms as stated in her disability reports and hearing testimony. AT 26.

25  Plaintiff complains of severe, widespread pain, fatigue, brain fog, migraine headaches,

26  fibromyalgia, dysfunctional urinary and digestive system, bipolar disorder, dizziness,

27  anxiety, depression, and ADHD. AT 278, 288-89, 290, 353, 1028, 1035. Plaintiff alleged

28  that she was unable to sit up for long periods of time, or stand or walk. AT 290. Plaintiff

1  has difficulty keeping track of tasks, and states that her ribs dislocate so moving is

2  painful. *Id.* Plaintiff alleges using a shower chair to bathe and needing to rest after, and

3  her partner does the shopping, cooking, and serves her meals. AT 291. Plaintiff rarely

4  goes outside because she states she is ill and is largely bedridden. AT 293. Plaintiff

5  enjoys movies, literature, astrology, watching television, and writing, but is unable to do

6  these things because of fatigue and brain fog. AT 294.

7       At the April 24, 2024 hearing, Plaintiff testified that she lives with her boyfriend

8  and his mother in a house, and she only leaves the house for medical appointments. AT

9  46. Plaintiff described a typical day and stated that in the morning she sits on her bed for

10  hours and takes her medication, then she tries to help with the dishes, and tries to do

11  self-care but that takes a lot of energy. AT 47. She spends a lot of the day online, and

12  communicates with people in a support group; she listens to audio books and colors. *Id.*

13  Plaintiff's partner cooks meals. *Id.* Plaintiff tries to go for short walks or go to the pool. *Id.*

14       Plaintiff testified that she borrows a wheelchair and walker from her mother-in-law,

15  but neither were prescribed by a doctor. AT 48. Plaintiff stated that she goes to therapy,

16  which was been helpful. AT 49. Plaintiff testified that she needs to rest 80% of the time

17  that she is awake, which includes lying in the dark because of her migraines, or reading

18  and watching movies. AT 50-51.

19       Regarding Plaintiff's physical impairments, the ALJ noted that while Plaintiff

20  alleged chronic pain, Lyrica was helpful and provided good relief according to treatment

21  records. AT 26; *see* AT 1048, 1055, 1177. In a March 26, 2022 internal medical

22  consultative examination, Plaintiff had tender points on her neck and back, but

23  demonstrated a full range of motion in her spine with no tenderness. AT 1036-37.

24  Plaintiff had a normal gait, but stated she had too much pain to do heel/toe walking. *Id.*

25  During a physical examination on April 22, 2022, Plaintiff demonstrated normal

26  musculoskeletal and neurological function. AT 1297. She was reported to be alert, and

27  oriented to person, place, time and situation. *Id.* Plaintiff had an appropriate mood and

28  affect. *Id.* Plaintiff had generally a normal gait and did not use an assistive device, but

1    had some pain and tenderness in her neck and back. AT 1037. Plaintiff was noted to be

2    fatigued, but she also demonstrated normal strength. AT 1034, 1036, 1037, 1092, 1056.

3    Plaintiff's medication was somewhat helpful for her migraine headaches. AT 289.

4         Regarding Plaintiff's mental impairments, treatment records show that Ativan has

5    been helpful in reducing Plaintiff's anxiety, but Plaintiff was also still having panic attacks

6    and anxiety. AT 1135, 1144, 1161. The treatment records reflect that Plaintiff was

7    sometimes depressed, dysphoric, anxious, or emotionally labile or reactive. AT 1029,

8    1175, 1181. But the records also showed that Plaintiff generally had appropriate

9    behavior, pleasant or cooperative attitude, normal orientation, normal speech, euthymic

10   mood, normal affect, good insight, good judgment, good impulse control, intact memory,

11   good attention, good concentration, unremarkable thought process, appropriate thought

12   content and unremarkable perception. AT 1027, 1057, 1062, 1107, 1111, 1113, 1115,

13   1117, 1119, 1121, 1123, 1125, 1127, 1172, 1191, 1197, 1204, 1238, 1248, 1297, 1388.

14        At an exam conducted on March 9, 2022, Plaintiff had an anxious mood but there

15   was no evidence of psychotic-like confusion, blocking, or bizarre speech. AT 1029.

16   Plaintiff was responsive and cooperative, could understand all test questions, and had

17   an attitude characterized by an adequate effort, interest, and compliance. *Id.* Plaintiff had

18   fair memory, attention, and concentration, and had insight and judgment within normal

19   limits. *Id.* During an internal medical consultive exam on March 26, 2022, Plaintiff

20   presented as alert, was calm, cooperative and verbally responsive, and appropriately

21   groomed. AT 1036. Plaintiff could recall three out of three words immediately and two

22   out of three words in five minutes. AT 1037. During an October 20, 2022 medical

23   consultive exam, Plaintiff was casually dressed with good grooming. AT 1131. She was

24   cooperative, fully oriented, with intact intelligence, but impaired attention where she

25   could recite a minimum of five digits forward and two in reverse. *Id.* Plaintiff had impaired

26   concentration, fair memory, and intact judgment and insight. Plaintiff presented with

27   anxious mood and affect congruent with her mood. *Id.*

28        This evidence of normal or mild impairments contradicts Plaintiff's statements of

9

"severe, widespread pain" and that her illness affected lifting, squatting, bending, standing, reaching, walking, kneeling, memory, completing tasks, concentration, understanding, following instructions, and using hands. AT 295. Regarding Plaintiff's physical impairments, Plaintiff had tender points on her neck and back, but also demonstrated a full range of motion in her spine, and demonstrated normal musculoskeletal and neurological function. AT 1297. This evidence also contradicts Plaintiff's statements that she needs to rest 80% of the day. It was noted in the record that Plaintiff was fatigued, but she also demonstrated normal strength. AT 1034, 1036, 1037, 1092, 1056. Further, Plaintiff alleged that she used a wheelchair, walker, and cane, but admits that she was not prescribed any of these devices and it was noted that she had a normal gait and did not use an assistive device by a medical provider. AT 1037.

Regarding Plaintiff's mental impairments, the ALJ noted that Plaintiff admitted she received specialized mental health treatment for her mental symptoms, which was helpful. AT 49. Despite allegations of frequent panic attacks, Plaintiff has not required psychiatric hospitalization since November 2021. AT 27, 1028, 1035. Plaintiff was sometimes depressed or anxious, but generally had appropriate behavior, cooperative attitude, normal orientation and speech, normal affect, good insight and judgment, good attention, and appropriate thought content. AT 1027, 1057, 1062, 1107, 1111, 1113, 1115, 1117, 1119, 1121, 1123, 1125, 1127, 1172, 1191, 1197, 1204, 1238, 1248, 1297, 1388.

It is appropriate for the ALJ to consider the objective medical evidence in resolving conflicts in Plaintiff's testimony, and the ALJ did not err in finding the limitations Plaintiff described were contradicted by mostly normal medical findings in the record. *See Rollins*, 261 F.3d at 857; *see also Marshall v. Saul*, 830 F. App'x 179, 181 (9th Cir. 2020) (finding clear and convincing reasons to reject the plaintiff's symptom testimony where there was a "disjunction between his statements that [he] could not walk and medical evidence showing that his gait was normal").

1        Plaintiff argues that the ALJ did not explain why the medical records that

2    supported Plaintiff's testimony were less probative than other normal medical findings.

3    Pl. MSJ at 8. However, all of the records Plaintiff cites in support of her argument are

4    records based on Plaintiff's own subjective statements. *See id.* at 9 (citing AT 694, 1046,

5    1052, 1152, 1260). An ALJ does not error by rejecting an opinion that is based largely on

6    a plaintiff's self-reports that have been properly discounted. *See Tommasetti v. Astrue*,

7    533 F.3d 1035, 1041 (9th Cir. 2008).

8        Second, the ALJ noted that Plaintiff received effective treatment for her physical

9    and mental impairments. AT 26, 27. Regarding Plaintiff's physical impairments, Plaintiff

10   argues that the ALJ improperly interpreted the medical records by citing to two instances

11   in the record that state Plaintiff was on Lyrica, but that she requests an increase in her

12   dose so she can receive optimal relief. Pl. MSJ at 10. However, there are other

13   instances in the record that demonstrate that Plaintiff received relief from treatment. The

14   ALJ noted that the treatment records indicate Lyrica is helpful and provides "good relief."

15   AT 26. The record contains further evidence that Plaintiff received effective treatment for

16   her physical impairments. Plaintiff indicated that medication is "somewhat" helpful in

17   treating her headache pain. AT 289. Plaintiff stated she has been stable on medications

18   and denies side effects. AT 1042. Plaintiff stated that she has been "very stable" on her

19   current dose of Lyrica, but has not had optimal relief and would like to try a higher dose.

20   AT 1046; *see* AT 1048, 1055, 1058, 1177, 1195 (stable on medication), 1218 (good

21   response with consistent pain relief), 1227, 1236. In February 2022, Plaintiff was

22   reported to be doing well and no longer on pain management, including Lyrica. AT 1073.

23       Regarding Plaintiff's mental impairments, the ALJ noted that Plaintiff received

24   mental health treatment, which Plaintiff admitted has been helpful. AT 49. Plaintiff's

25   treatment records also indicate that Ativan has been helpful in reducing Plaintiff's

26   anxiety, but Plaintiff feels it's not controlled. AT 1135, 1144, 1161. Plaintiff attended

27   therapy, where she was assessed with normal orientation, behavior, speech; euthymic

28   mood; congruent affect; excellent insight and judgment; good attention and

1    concentration; appropriate thought content; and intact functional status. AT 1388. Other

2    therapy notes contain similar findings. *See* AT 1392, 1394, 1396, 1398.

3         Evidence of conservative treatment is a clear and convincing reason for the ALJ

4    to discount Plaintiff's subjective symptom testimony. *See Parra*, 481 F.3d at 750-51.

5    Therefore, the ALJ properly relied on evidence of treatment to discount Plaintiff's

6    subjective symptom testimony.

7         Third, the ALJ also cited Plaintiff's activities of daily living as a reason for

8    discounting Plaintiff's testimony. AT 28. The ALJ noted that Plaintiff described activities

9    that are "highly limited," but it is difficult to attribute the degree of limitation to Plaintiff's

10   medical condition "as opposed to other reasons." *Id.* Plaintiff admitted to living with

11   others, shopping by computer, using the internet, participating in online communities,

12   texting, and listening to audiobooks. AT 27; *see* AT 47, 292, 293, 294, 333, 334. Plaintiff

13   reported being able to dress and bathe herself, and perform some activities of daily

14   living. AT 1028. But in her hearing testimony, Plaintiff states that self-care takes a lot of

15   energy, she sometimes showers, sometimes does light exercise, and sometimes helps

16   with dishes. AT 47. Contradictions between Plaintiff's symptom testimony and her actual

17   activities of daily living is a permissible reason to discount Plaintiff's severely limiting

18   symptom statements. *See Burch*, 400 F.3d at 680-81 (finding symptom statements

19   contradicted by the plaintiff's ability to care for her personal needs, cook, clean and

20   shop, interact with family and boyfriend, and noting that though these daily activities

21   "may also admit of an interpretation more favorable to [the plaintiff], the ALJ's

22   interpretation was rational" and must be upheld where susceptible to more than one

23   rational interpretation). Plaintiff did not explicitly challenge the ALJ's findings on this point

24   in her opening brief. *See Mata*, 2014 WL 5472784, at *4.

25        Fourth, the ALJ states that Plaintiff's work history and earnings record show that

26   Plaintiff only worked sporadically before November 2021, and questioned whether the

27   Plaintiff's continuing unemployment is actually due to medical impairments. AT 28. The

28   record shows minimal earnings prior to 2005, and no earnings since 2005. AT 264-65.

1    Further, Plaintiff stated that she had not worked since July 2004. AT 278. Plaintiff's

2    limited work history is a clear and convincing reason for the ALJ to discount Plaintiff's

3    subjective symptom testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

4    2002).

5         Plaintiff also argues that the consultative examiner report supports Plaintiff's

6    subjective symptom testimony. *See* Pl. MSJ at 9-10. Plaintiff does not refer to this

7    examiner by name, but based on the record page cited, Plaintiff is referring to the mental

8    consultative examination by Gena Clark-McKnight, Ph.D. *See id.*; AT 1134. The ALJ

9    discussed this opinion, and noted that Dr. Clark-McKnight concluded that Plaintiff had

10   marked limitations with the ability to complete a normal workday or workweek without

11   interruptions resulting from Plaintiff's psychiatric condition, interact with coworkers and

12   the public, and deal with the usual stresses encountered in a competitive work

13   environment. AT 1133-34. However, the ALJ found this opinion not persuasive because

14   it is not supported by Dr. Clark-McKnight's own report and it is inconsistent with the other

15   consultative examination report from March 9, 2022, and treatment records. AT 29.

16   Critically, as Defendant notes, Plaintiff has not challenged the ALJ's analysis of this

17   medical opinion, and has waived the issue. Def. MSJ at 10; *see Greger v. Barnhart*, 464

18   F.3d 968, 973 (9th Cir. 2006).

19        Fifth, Defendant argues that the two unchallenged medical opinions and the

20   medical consultants contradict Plaintiff's allegations. Def. MSJ at 9. The ALJ found that

21   the medical evidence in the record does not support Plaintiff's allegations of totally

22   incapacitating symptoms. AT 29. The ALJ found the opinion of the internal medicine

23   consultative examiner persuasive. AT 29. This examiner opined that Plaintiff could

24   perform light work with only occasional stooping and bending and no hazards persuasive

25   because it is supported by the adequate physical functioning the Plaintiff exhibited

26   during the exam and consistent with normal musculoskeletal and neurologic function

27   documented in the treatment records. AT 28, 1037-38. The ALJ found the opinion of

28   State agency medical consultants that Plaintiff could perform some medium work but

1   could only occasionally crawl and climb ladders, ropes, and scaffolds, and had other

2   limitations largely persuasive because they are supported by the generally adequate

3   physical functioning exhibited during the adjudicative period, and was consistent with the

4   effectiveness of her medications. AT 28, 68-72. But the ALJ found that the opinions

5   somewhat overstated Plaintiff's physical capacity and did not adequately consider her

6   subjective complaints. AT 29. The ALJ found the opinion of G.E. Washington, Psy.D.,

7   medical consultive examiner, and the State agency psychological consultants largely

8   persuasive. AT 29. The ALJ found the opinion that Plaintiff could perform some work

9   largely persuasive because it is supported by the generally adequate mental functioning

10  exhibited during the adjudicative period, and consistent with the effectiveness of

11  Plaintiff's treatment and her testimony about daily living activities. *Id.* However, the ALJ

12  found the opinions somewhat overstated Plaintiff's mental capacity and did not

13  adequately consider her subjective complaints or her long history of mental health

14  treatment. *Id.* The ALJ could properly discount Plaintiff's subjective symptom testimony

15  based on these medical opinions. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175

16  (9th Cir. 2008).

17        Finally, the ALJ did not wholly discount Plaintiff's symptom statements. The ALJ

18  did not deem Plaintiff able to perform any job in the national economy. Instead, the ALJ

19  found that Plaintiff was limited to light work, with many additional limitations included in

20  her residual functional capacity. AT 25. Further, the ALJ considered Plaintiff's subjective

21  complaints when determining the persuasiveness of certain medical opinions. AT 29.

22  Under the regulations, Plaintiff's statements of subjective symptoms alone are

23  insufficient grounds to establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). The

24  Court finds the ALJ provided sufficiently specific reasons for discounting the more severe

25  aspects of Plaintiff's symptom testimony regarding her physical impairments, such that

26  the Court does not find Plaintiff's testimony was arbitrarily discredited. *See Brown-*

27  *Hunter*, 806 F.3d at 493.

28  / / /

**V.    CONCLUSION**

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

**ORDER**

Accordingly, the Court ORDERS:

1.    Plaintiff's motion for summary judgment (ECF No. 12) is DENIED;

2.    The Commissioner's cross-motion (ECF No. 15) is GRANTED;

3.    The final decision of the Commissioner is AFFIRMED; and

4.    The Clerk of the Court is directed to CLOSE this case.

Dated:  July 25, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

5, bene.3310.24